## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHARLES ALFORD**                                          **CIVIL ACTION**

**VERSUS**                                                           **NO.  05-2587**

**N. BURL CAIN, WARDEN**                             **SECTION "B"(2)**
**LOUISIANA STATE PENITENTIARY**


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.   STATE COURT PROCEDURAL BACKGROUND

The petitioner, Charles Alford, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On July 8, 1996, Alford and three co-defendants, Karl Randolph, Tony Williams and David Marquis, were charged in a bill of information in Orleans Parish with possession of cocaine in the amount of 28 grams or more but less than 200 grams.[3]  Marquis was also charged in a second count with possession with intent to distribute marijuana.  An amended bill of information was filed on September 16, 1996. In it, the State entered a nolle prosequi as to the charges against Karl Randolph, who apparently died,[4] and added Alford to the second count, thereby additionally charging Alford with possession with intent to distribute marijuana.[5]  The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case as follows:

> On 22 February 1996, New Orleans Police Detective Kevin Honore was working as an undercover officer in a drug investigation in the CBD.  At the time of the investigation, Detective Honore was assigned to the Narcotics Division and worked with the Drug Enforcement Administration (DEA) task force.  Detective Honore's job assignment called for him to attempt to purchase crack cocaine from a subject named Charles who worked at the APCOA parking lot located in the CBD near Tchoupitoulas and Poydras Streets.

---

[2]Rec. Doc. No. 1, Petition.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 7/8/96; Charge List and Docket Entry, 7/8/96.

[4]State v. Alford, 765 So.2d 1120, 1122 (La. App. 4th Cir. 2000); St. Rec. Vol. 2 of 6, 4th Cir. Opinion, 99-KA-0299, p.1, 6/14/00.

[5]St. Rec. Vol. 2 of 6, Motion Hearing Transcript, p.19, 9/3/96; St. Rec. Vol. 1 of 6, Minute Entry, 9/16/96.

Detective Honore had never met Charles and did not know his last name. On 22 February 1996, Detective Honore arrived at the APCOA parking lot sometimes after lunchtime. He was wearing a monitoring device which was being monitored by Skip Sewell, a special agent with the DEA, and Chad Scott, a criminal investigator for the DEA Task Force.

Detective Honore arrived at the parking lot and talked to the defendant about purchasing five ounces of crack cocaine for forty seven hundred dollars. The defendant told the detective that he did not have the cocaine on hand, but he indicated that he could get someone to bring it to him. While the defendant was negotiating with Detective Honore, Marquis Davidson, the defendant's co-worker, was placing the telephone calls for the defendant. Detective Honore waited for a short period of time then told the defendant he would return later. The defendant assured him that it would not take long to procure the drugs. After riding around the neighborhood, Detective Honore returned to the APCOA parking lot. The defendant gave several excuses to explain why the cocaine had not yet been delivered. The defendant kept talking to the undercover detective during the long wait; several times the defendant sat in the car talking to the detective while they waited. During the wait, the defendant offered the detective some marijuana. The detective refused. After waiting until around 3:30 p.m. the detective left. The defendant told the detective to return the next day; he indicated that he was sure that he could get the cocaine for him. Shortly after Detective Honore left the scene Agent Sewell and Mr. Scott observed a black Camaro arriving at the parking lot. [K]arl Randolph exited the vehicle and spoke briefly with the defendant and Marquis Davidson for about five minutes and then left the parking lot.

Detective Honore returned to the APCOA parking lot the next day just before lunchtime. When he arrived, the defendant still did not have the cocaine on the parking lot. However, he assured Detective Honore that all he had to do was place a phone call and the drugs would be delivered. This time Detective Honore waited a little more than an hour for the cocaine to arrive. During the wait, the defendant again offered the detective some marijuana. Again the detective refused. The defendant never actually showed Detective Honore the marijuana; rather, he indicated that the marijuana was located in the shed.

Finally, a black Camaro pulled into the parking lot, and the defendant indicated to the detective that the cocaine had arrived. The men were standing by the parking shed when the Camaro being driven by [K]arl Randolph arrived. Tony Williams was sitting in the passenger seat. Marquis Davidson walked over to the Camaro and talked with [K]arl and Tony. [K]arl Randolph handed the cocaine [to] Marquis Davidson. Marquis Davidson placed it under his shirt and walked back to Detective Honore. He showed Detective Honore the cocaine, and the detective told him that he would go get the money out of his car. Detective

3

Honore walked back to his vehicle and gave the arrest signal.  At that time the other agents involved in the investigation moved in to assist with the arrests.  Detective Honore identified several bags of cocaine as the cocaine that Marquis Davidson showed him.

Detective Chris Ortiz of the City of Kenner Police Department was assigned to the DEA Task Force on 23 February 1996, the day the investigation culminated.  Detective Ortiz was assigned to the arrest and surveillance team and was a member of the take-down team.  When he arrived on the scene the two people in the black Camaro had already been arrested.  Officer Ortiz proceeded to the attendant's shed of the parking lot and recovered a clear plastic bag containing an ounce and a half of marijuana.  He gave the marijuana to Agent Sewell.  Nobody was in the shed when Officer Ortiz walked in and recovered the marijuana; however, the defendant was standing outside the shed with another agent.  He had already been taken into custody.

Marquis Davidson testified that he had pled guilty as charged to the possession of cocaine and possession with intent to distribute marijuana charges the day prior to trial.  He indicated that no offers or promises had been made to him.  Mr. Davidson stated that he and the defendant worked together at the APCOA parking lot.  Mr. Davidson and the co-defendant, Tony Williams, were acquaintances from high school.  Mr. Davidson testified that on 22 February 1996, his friend, [K]arl Randolph, came to the parking lot for a few minutes to discuss a drug transaction.  He could not recall the defendant being present at the time.  However, on 23 February 1996, [K]arl came to the parking lot to deliver a package containing cocaine to the defendant.  He gave the cocaine to Mr. Davidson, and Mr. Davidson gave the package to the defendant.

State v. Alford, 765 So.2d 1120, 1122-24 (La. App. 4th Cir. 2000); State Record Volume 2 of 6, Fourth Circuit Opinion, 99-KA-0299, pp.2-5, June 14, 2000.

The co-defendant Davidson entered a plea of guilty as charged to both counts on May 21, 1997.[6]  He was later sentenced to serve seven years in prison on each count.[7]

---

[6]St. Rec. Vol. 1 of 6, Waiver of Constitutional Rights Plea of Guilty, 5/21/97.

[7]St. Rec. Vol. 1 of 6, Sentencing Minutes (Davidson), 9/19/97.

In the meantime, Alford and Williams proceeded to jury trial on May 21 and 22, 1997.[8]  The jury found Williams not guilty and found Alford guilty as to count one of attempted possession of cocaine in the amount of 28 grams or more but less than 200 grams and guilty as to count two of possession of marijuana.[9]

The State filed a multiple bill charging Alford as a multiple offender.[10]  On November 4, 1997, the state trial court found Alford to be a third offender.  The court sentenced him as to count one to serve a life sentence without benefit of parole, probation or suspension of sentence, and as to count two, to serve six months in parish prison, to run concurrently.[11]  At the same hearing, the court denied Alford's motion to reconsider the sentence.[12]

On appeal, counsel asserted four assignments of error:[13] (1) The jury erred in finding Alford guilty because the evidence proved inducement in support of the entrapment defense. (2) The evidence was insufficient to establish possession of

---

[8]St. Rec. Vol. 1 of 6, Trial Minutes, 5/21/97; Trial Minutes (2 pages), 5/22/97.

[9]Id.; St. Rec. Vol. 3 of 6, Verdict Count 1, 5/22/97; Verdict Count 2, 5/22/97.

[10]St. Rec. Vol. 1 of 6, Multiple Bill, 10/22/97.

[11]St. Rec. Vol. 1 of 6, Sentencing Minutes (Alford), 11/4/97.

[12]Id.; St. Rec. Vol. 1 of 6, Motion for Reconsideration of Sentence, 11/4/97.

[13]St. Rec. Vol. 2 of 6, Appeal Brief, 99-KA-0299, 12/14/99; 4th Cir. Opinion, 99-KA-0299, 6/14/00; State v. Alford, 765 So.2d 1120, 1122-24 (La. App. 4th Cir. 2000).

marijuana. (3) The case should have been remanded for a new multiple bill hearing because the exhibits introduced were missing from the record. (4) The multiple offender life sentence was excessive.  The Louisiana Fourth Circuit affirmed Alford's conviction and sentence on May 10, 2002.[14]  The court held that the first, second and fourth claims were without merit.  The court further determined that the third claim was procedurally improper because Alford had not preserved objections to the multiple offender proceedings.

Alford filed a timely[15] writ application with the Louisiana Supreme Court on July 14, 2000.  The Louisiana Supreme Court denied the application without reasons on September 28, 2001.[16]  Alford's conviction became final 90 days later, on December 27, 2001, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[14]State v. Alford, 765 So.2d at 1120; St. Rec. Vol. 2 of 6, 4th Cir. Opinion, 99-KA-0299, 6/14/00.

[15]La. Code Crim. P. art. 922(A), (C) and La. S. Ct. R. X§5 provide a petitioner 30 days from issuance of the appellate court's opinion to file a writ application in the Louisiana Supreme Court.  The postmark of July 11, 2000 and the filing date of July 14, 2000, were within that period.  St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2000-KO-2120, 7/14/00; see Marshall v. Cain, 155 Fed. Appx. 769, 2005 WL 3115095 (5th Cir. Nov. 22, 2005) (postmark date controls under La. S. Ct. Rule X§5); see also, Causey v. Cain, 450 F.3d 601 (5th Cir. 2006) (prisoner mailbox rule applies to filings in Louisiana state courts).

[16]State v. Alford, 797 So.2d 683 (La. 2001); St. Rec. Vol. 2 of 6, La. S. Ct. Order, 2000-KO-2120, 9/28/01.

On August 28, 2002, Alford filed an application for post-conviction relief alleging five grounds for relief: (1) The trial court failed to comply with La. Code Crim. P. art. 881 for receipt and recordation of the verdict. (2) The trial court failed to comply with La. Code Crim. P. art. 804 when instructing the jury on reasonable doubt. (3) He was denied a fair trial because the court denied the motion for mistrial when the prosecutor made improper remarks in closing argument. (4)(a) There was insufficient evidence at the multiple offender hearing; and (b) counsel was ineffective in failing to object to the proof offered as to the two prior convictions. (5)(a) His right to judicial review was violated due to an incomplete record; and (b) ineffective assistance of appellate counsel, who failed to prepare an effective appeal based on the entire record.[17]  The state trial court denied the application without reasons on April 7, 2004.[18]

The Louisiana Fourth Circuit Court of Appeal denied Alford's subsequent writ application on June 15, 2004, finding no error in the trial court's judgment.[19]  Alford also

---

[17]St. Rec. Vol. 3 of 6, Copy of Uniform Application for Post Conviction Relief, signed 8/28/02.

[18]St. Rec. Vol. 3 of 6, Trial Court Judgment, 4/7/04.

[19]St. Rec. Vol. 3 of 6, 4th Cir. Order, 2004-K-0817, 6/15/04; St. Rec. Vol. 4 of 6, 4th Cir. Writ Application, 2004-K-0817, 5/18/04.

filed a timely writ application with the Louisiana Supreme Court on June 20, 2004.[20]

This application was denied without reasons on May 6, 2005.[21]

## II.   FEDERAL HABEAS PETITION

On June 23, 2005, Alford filed a petition for federal habeas corpus seeking relief on the following grounds:[22] (1) The trial court failed to comply with La. Code Crim. P. art. 881 for receipt and recordation of the verdict. (2) The trial court failed to comply with La. Code Crim. P. art. 804 when instructing the jury on reasonable doubt. (3) He was denied a fair trial because the court denied the motion for mistrial when the prosecutor made improper remarks in closing argument. (4)(a) There was insufficient evidence at the multiple offender hearing; and (b) counsel was ineffective in failing to object to the proof offered as to the two prior convictions. (5)(a) His right to judicial review was violated due to an incomplete record; and (b) ineffective assistance of appellate counsel, who failed to prepare an effective appeal based on the entire record.

No response to this petition has been filed in this case by the Orleans Parish District Attorney's Office, because of the difficulties the office has been faced with since Hurricane Katrina.  However, enough of the state court record has been provided to this

---

[20]St. Rec. Vol. 3 of 6, La. S. Ct. Writ Application, 2004-KH-1816, 7/20/04 (postmark 6/30/04).

[21]State ex rel. Alford v. State, 901 So.2d 1086 (La. 2005); St. Rec. Vol. 4 of 6, La. S. Ct. Order, 2004-KH-1816, 5/6/05.

[22]Rec. Doc. No. 1.

court to permit review of this petition, I am issuing this report and recommendation without having received any response from the Orleans Parish District Attorney.  When it plainly appears from the petition and attached exhibits that the petitioner is not entitled to relief, the district court must dismiss the petition without need for a response from the respondent.  Rule 4, Rules Governing Section 2254 Cases.

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Alford's petition, which, for reasons discussed below, is deemed filed in this federal court on May 31, 2005.[24]

------

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Alford's petition was filed by the clerk of court on June 23, 2005, when the filing fee was paid.  Alford dated his signature on the petition on May 31, 2005.  This is the earliest date on which he could have delivered the pleadings to

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The record reflects that Alford has timely filed this petition, exhausted available state court remedies and is not in procedural default on the claims he asserts in this federal petition.  Alford raised each of his claims in the state courts on post-conviction review.  The state courts at every level denied relief without providing reasons.  This Court therefore will review the merits of the claims because there is no clear reliance on a state procedural rule which would bar federal review of the claims.  See Amos v. Scott, 61 F.3d 333 (5th Cir. 1995) (federal habeas review is barred only where the state courts specifically relies upon an independent and adequate state procedural rule in denying the claim); see also, Miller v. Johnson, 200 F.3d 275, 281 (5th Cir. 2000) and Fisher v. Texas, 169 F.3d 295 (5th Cir.1999).  Based on the record before this court, Alford's claims are without merit for the following reasons and must therefore be dismissed.

---

prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

IV.   <u>STANDARDS OF A MERITS REVIEW</u>

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), <u>cert. denied,</u> 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir. 2000) (quoting <u>Miller</u>, 200 F.3d at 280-81),  <u>aff'd in part, rev'd in part on  other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state-court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25).

V.      FAILURE TO COMPLY WITH LA. CODE CRIM. P. ART. 881 (CLAIM NO.
        ONE)

        Alford alleges that the state trial court violated his constitutional rights when it

failed to comply La. Code Crim. P. art. 881 with respect to count one, the attempted

possession of cocaine conviction.[25]  Alford argues that discrepencies exist between the docket entry, the court minutes and the actual verdict with regard to count one.  He claims that, because the jury's verdict form is not in the record, the clerk's minute entry prevails as proof of the verdict.  In this case, the court's docket sheet and minute entry show that Alford was convicted of attempted possession of cocaine with intent to distribute, indicated by the letters "WITD."  Alford argues that he was never charged with such a crime nor was the charge a responsive verdict.

Alford suggests that this discrepancy was never resolved because the trial court failed to comply with the requirements of Louisiana law regarding receipt and recordation of the verdict.  A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."  Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted).  This court's analysis focuses on due process considerations, and due process requires that the court grant the writ only when the errors of the state court made the underlying proceeding fundamentally unfair.  Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986).  Thus, the court can consider Alford's arguments only in the context of federal constitutional law.

---

[25]La. Code Crim. P. art. 811 reads as follows:  "If the verdict is correct in form and responsive to the indictment, the court shall order the clerk to receive the verdict, to read it to the jury, and to ask: "Is that your verdict?"  If the jury answer "Yes," the court shall order the clerk to record the verdict and shall discharge the jury."

As a general matter, due process requires that state court proceedings be fundamentally fair.  Lisenba v. People of the State of California, 314 U.S. 219, 236-37 (1941).  A criminal proceeding is fundamentally unfair when the error fatally infects the trial or is of such a quality that it necessarily prevents a fair trial.  Id.; Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the proceedings fundamentally unfair or violate an explicit constitutional right.)

In this case, Alford has failed to identify an actual error by the trial court and otherwise has not presented a constitutional issue for this court to review.  Alford contends only that clerical errors in the minute entry and docket sheet, which include reference to "WITD" as part of his attempted possession charge, cast doubt on the accuracy of the verdict itself.  He attempts to support this conclusion by arguing that the trial court did not receive the verdict in open court or record it in the record, i.e. the jury's written verdict form is not in the record.  Alford's premise is erroneous.

The minute entry from the trial reflects that the verdict in fact was received from the jury in open court at 4:08 p.m. on May 22, 1997.[26]  It also reflects that the court deemed the verdict legal and ordered that it be recorded.  In addition, the verdict forms

---

[26]St. Rec. Vol. 1 of 6, Trial Minutes (2 pages), 5/22/97.

for both counts in fact are present in the record.[27]  The verdict form for count one, which

also has been submitted by Alford as an exhibit to his claim, reads as follows:[28]

>    Date: <u>5/22/97</u>
>    We, the jury, find the defendant, CHARLES ALFORD:
>    <u>Guilty of attempted possession of cocaine in the amount of 28 grams or</u>
>    <u>more, but less than 200 grams.</u>
>                             <u>/s/ Joseph E. Arnold</u>
>                             FOREPERSON

(underlines in original).  The underlined portions were completed in the handwriting of

the foreperson.  The verdict reads exactly as written in the state trial court's responsive

verdicts listing, which was also presented to the jury on May 22, 1997.[29]  Neither the

verdict form nor the court's responsive verdict list indicate "WITD" or any reference to

an intent to distribute in connection with that charge.  I have not located any United

States Supreme Court precedent which would construe the clerical error on the

subsequent minute entry to be tantamount to a violation of due process.

    For these reasons, Alford has failed to present a federal constitutional claim upon

which habeas relief might be granted.  The decisions of the state courts on this issue

therefore cannot be said to be either contrary to, or an unreasonable application of,

---

[27]St. Rec. Vol. 1 of 6, Verdict Count 2, 5/22/97; St. Rec. Vol. 3 of 6, Verdict Count 1, 5/22/97.

[28]St. Rec. Vol. 3 of 6, Verdict Count 1, 5/22/97.

[29]St. Rec. Vol. 1 of 6, Responsive Verdicts Count 1, 5/22/97.

United States Supreme Court precedent.  Accordingly, Alford is not entitled to relief on this claim, and the claim should be dismissed.

VI.    FAILURE TO COMPLY WITH LA. CODE CRIM. P. ART. 804 (CLAIM NO. TWO)

Alford alleges that the state trial court erred in failing to comply with La. Code Crim. P. art. 804 when it instructed the jury on the meaning of reasonable doubt. Specifically, Alford contends that the state court failed to instruct the jury that reasonable doubt can be found from a "lack of evidence" as provided in Art. 804.

In this case, the record does not contain a copy of the charges given nor the state court's written or proposed jury instructions.  However, Alford's argument is nothing more than that the instructions did not comply with Louisiana law.  As discussed above, this court does not sit to review a state trial court's failure to comply with state law. Wilkerson, 16 F.3d at 67.

This court's task on habeas corpus review is ultimately to determine whether the underlying proceeding was fundamentally unfair in violation of due process standards. Lisenba, 314 U.S. at 236-37; Neyland, 785 F.2d at 1293; Peters, 942 F.2d at 940.  The court does not concern itself with whether a jury instruction violated state law.   Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  Instead, a defective jury instruction is not grounds for habeas relief unless the error of the state court renders the underlying proceeding fundamentally unfair.  Id., at 67-68 (1991).  The burden of proof is therefore

16

on Alford to prove the error and the constitutional violation.  <u>Cupp v. Naughten</u>, 414 U.S.

141, 146 (1973).   In this case, Alford's claim has failed to rise to the level of a

constitutional issue.

The Constitution neither prohibits trial courts from defining reasonable doubt nor

requires them to do so as a matter of course.  <u>Victor v. Nebraska</u>, 511 U.S. 1, 5-6 (1994)

(citing <u>Hopt v. Utah</u>, 120 U.S. 430, 440-441 (1887)).  The due process standard also does

not require the use of any specific wording or formulation; all that is required is that the

jury be instructed to find the defendant's guilt beyond a reasonable doubt.  <u>Id</u>., 511 U.S.

at 5.

Contrary to Alford's argument, due process did not require the state trial court to

define reasonable doubt or to use any particular language to do so.  The court was

therefore not obliged by the Constitution to include the "lack of evidence" phrase when

charging the jury.  There is no United States Supreme Court precedent which would do

so.  In fact, the Supreme Court has recognized that while "numerous courts have defined

a reasonable doubt as one 'based on reason which arises from the evidence or lack of

evidence,'" <u>see</u> <u>Johnson v. Louisiana</u>, 406 U.S. 356, 360 (1972), the Supreme Court has

not mandated that such a definition be given to a jury.  The Court has instead instructed

that due process does not require that the term be defined.  <u>Victor</u>, 511 U.S. at 5-6.  For

this reason, Alford has not established that the charge, even if given as he has alleged,

was in error.

Furthermore, when considering the due process implications of a jury charge, the relevant question is not whether the instruction "could have" been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did apply the instruction to allow a conviction based on proof insufficient to meet the reasonable doubt standard set forth in In re Winship, 397 U.S. 358 (1970).  Id. at 6; Estelle v. McGuire, 502 U.S. 62, 72 (1991).  A single instruction to a jury may not be judged "in artificial isolation," but must be considered in the context of the instructions as a whole and in the context of the trial record.  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 146-147); Holland v. United States, 348 U.S. 121, 140 (1954) ("taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.")  The instruction must have infected the entire trial so as to cast doubt on the conviction and not merely be "undesirable, erroneous, or even 'universally condemned.'"  Cupp, 414 U.S. at 146-47.

Thus, the fact that the "lack of evidence" phrase may not have been used by the state trial court does not alone indicate a violation of due process.  See United States v. Tant, 412 F.2d 840 (1969) ("it is not error for the trial judge to refuse to charge that reasonable doubt could arise from the lack or failure of evidence.")  Alford has not shown nor suggested that the state trial court instructed the jury in a manner that lightened or shifted the burden of proof.  The record before this court does not indicate that the state trial court confused the jury or led the jury to believe that reasonable doubt

could not be drawn from the lack of evidence.  Without a showing of reasonable

likelihood that the jury was so misled, Alford has not established a due process violation

arising from the alleged failure to include the "lack of evidence" language.  See Rault v.

Louisiana, 772 F.2d 117, 136-37 (1985) (finding that a charge without the "lack of

evidence" phrase adequately conveyed through other language the concept that

reasonable doubt could arise from the absence of evidence); Leecan v. Lopes, 893 F.2d

1434 (2d Cir. 1990).

For these reasons, Alford has failed to establish that the decisions of the state

courts in denying relief were contrary to, or an unreasonable application of, United States

Supreme Court precedent.  Accordingly, Alford is not entitled to relief on this claim, and

the claim should be dismissed.

VII.   IMPROPER CLOSING REMARKS BY THE PROSECUTOR (CLAIM NO. THREE)

Alford contends that the prosecutor improperly expressed his opinion of guilt

during closing argument in violation of La. Code Crim. P. art. 774.[30]  Specifically, Alford

---

[30]Art. 774 outlines the scope of argument by counsel in a criminal proceeding:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.

argues that the district attorney erred when he made the following comment regarding the entrapment defense in connection with the cocaine transaction:[31]

> The minute Kevin Honore said I want five, they started talking about price.  Charles Alford says he can get it for him and he tells him to sit tight, tells him to sit tight there all day.  He didn't induce Charles Alford to do anything he wasn't already doing.  He might not have been doing it in that quantity, but he didn't induce him to do something he wasn't already doing.

Alford's trial counsel objected to the statement without giving a basis therefor.[32]  The trial court overruled the objection, stating that the prosecutor was free to argue his point, although the ruling did not mean that the statement was correct.[33]  Alford nevertheless argues that the statement that he was not asked "to do something he wasn't already doing" was merely the opinion of the district attorney as to his guilt.  He also suggests that there was no evidence at trial to suggest that he was already selling drugs.

As noted above, the question of whether Alford's claim that the prosecutor's comments violated state law will not support federal habeas relief.  Wilkerson, 16 F.3d at 67.  Instead, this court must examine the fundamental fairness of the proceedings.  Lisenba, 314 U.S. at 236-37; Neyland, 785 F.2d at 1293; Peters, 942 F.2d at 940.  Improper jury argument by the State does not present a claim of constitutional magnitude

---

[31]St. Rec. Vol. 2 of 6, Trial Transcript, p. 152, 5/22/97; Transcript of Closing Arguments, p.7, 5/22/97.

[32]St. Rec. Vol. 2 of 6, Trial Transcript, p. 152, 5/22/97; Transcript of Closing Arguments, p.7, 5/22/97.

[33]St. Rec. Vol. 2 of 6, Trial Transcript, p. 152-53, 5/22/97; Transcript of Closing Arguments, p.7, 5/22/97.

in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment.  Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988).  Due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir. 1987).  The remark must be evaluated in the context of the entire trial.  Greer v. Miller, 483 U.S. 756, 765-66 (1987) (citing Darden, 477 U.S. at 179); Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985).  Thus, to obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks."  Jones, 864 F.2d at 356; Hogue v. Scott, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994).

In this case, the prosecutor's comment was directed at Alford's entrapment defense.  The prosecutor argued throughout that Alford was not induced to sell drugs by the undercover police officer, but instead was actively pursuing the sale himself.[34]  In that regard, he referenced the testimony of the officers, who stated that the operation was

---

[34]St. Rec. Vol. 2 of 6, Transcript of Closing Arguments, pp.3-9, 5/22/97.

targeted at the parking lot and a man named Charles.[35]  This testimony supports the prosecutor's inference that Charles Alford was the Charles at the parking lot and was "already doing" what the officer asked him to do, sell drugs.

The prosecutor also argued that the evidence showed Alford was ready and willing to do anything to sell the cocaine.[36]  To support this, the prosecutor outlined the testimony showing that when Alford could not produce the cocaine immediately, he tried to get the undercover officer to stay at the parking lot, smoke marijuana and "hang-out" while he continued his efforts to fill the cocaine order.[37]  He even asked the officer to come back the next day to complete the sale.[38]

Furthermore, Alford's counsel spent a great part of his own closing argument explaining entrapment.[39]  He argued that the same evidence referenced by the prosecutor demonstrated that Alford was persuaded by the officer to sell drugs because of the officer's persistence in pursuing the transaction.  He pointed to the number of times the officer left the parking lot to return later, still looking for cocaine.  He pointed out that

---

[35]St. Rec. Vol. 2 of 6, Transcript of Closing Arguments, pp.3-4, 8, 5/22/97; Trial Transcript, pp.23, 24, 44, 89, 90, 5/22/97.

[36]St. Rec. Vol. 2 of 6, Transcript of Closing Arguments, pp.6, 9, 5/22/97.

[37]St. Rec. Vol. 2 of 6, Transcript of Closing Arguments, pp.6, 9, 5/22/97; Trial Transcript, pp.94, 96-97.

[38]St. Rec. Vol. 2 of 6, Transcript of Closing Arguments, pp.6, 9, 5/22/97; Trial Transcript, pp.93-95.

[39]St. Rec. Vol. 2 of 6, Transcript of Closing Arguments, p.10-17, 5/22/97.

Alford did not have the cocaine the officer was looking for, yet the officer pursued the transaction.  He argued that Alford, who had no cocaine with him, was obviously not the "drug kingpin" for whom they were looking.

Considering the trial as a whole, the prosecutor's comments were not out of line with the evidence and did not amount to misconduct.  Most significant is the fact that the prosecutor's argument was consistent with the testimony and the significant evidence of guilt already before the jury.  The comment did not render the trial fundamentally unfair or violate due process.

The state courts' denial of relief was not contrary to, nor an unreasonable application of, United States Supreme Court precedent.  Accordingly, Alford is not entitled to relief on this claim, and the claim should be dismissed.

VIII.   INSUFFICIENT EVIDENCE AT THE MULTIPLE OFFENDER HEARING (CLAIM NO. FOUR)

Alford alleges that the evidence admitted at the multiple offender hearing was insufficient to establish that he was a third offender.  He argues that the State failed to identify him as the same person who pleaded guilty in the prior cases and failed to prove that he was represented by counsel in the prior cases.  While he concedes, however, that he was linked by fingerprints to the prior arrest registers, he contends that he was not identified as the person actually convicted.

The well established federal standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979), applies to sufficiency of the evidence determinations. <u>Jackson</u> requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. <u>Donahue v. Cain</u>, 231 F.3d 1000, 1004 (5th Cir. 2000); <u>Gilley v. Collins</u>, 968 F.2d 465, 467 (5th Cir. 1992); <u>Guzman v. Lensing</u>, 934 F.2d 80, 82 (5th Cir. 1991).

To establish that a defendant is a habitual felony offender under La. Rev. Stat. Ann. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. <u>State v. Shelton</u>, 621 So.2d 769 (La.1993); <u>State v. Staggers</u>, 2003 WL 22438958 at *5-*6 (La. App. 5th Cir. 2003) (<u>citing</u> <u>State v. Davis</u>, 829 So.2d 554 (La. App. 5th Cir. 2002)); <u>State v. Warfield</u>, 2003 WL 22439586 at *2-*3 (La. App. 2d Cir. 2003). Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction. <u>State v. Staggers</u>, 2003 WL 22438958 at *6. However, independent proof, such as matching fingerprints and other vital information, is required to show that the defendant is the same person identified in those records. <u>State v. Walker</u>, 795 So.2d 459, 463 (La. App. 5th Cir. 2001), <u>writ denied</u>, 826 So.2d 1115 (La. 2002).

The Louisiana Supreme Court has also held that, upon presentation of sufficient proof of identity and prior convictions, the burden shifts to the defendant to challenge the validity of the underlying convictions:

> If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.

State v. Shelton, 621 So.2d at 779 (footnotes omitted).

In the instant case, the State introduced the testimony of Officer Lawrence James, a latent fingerprint expert.[40]  Officer James testified at the multiple bill hearing that the fingerprints on the two certified arrest registers from the prior cases matched the prints taken from Alford in court on October 27, 1997.[41]  In connection with Officer James's testimony, the State submitted certified copies of the arrest registers and the conviction

---

[40]St. Rec. Vol. 2 of 6, Multiple Bill Hearing Transcript, p. 2, 11/4/97.

[41]Id., p. 4.

packets from the two prior convictions.[42]  The testimony and evidence was sufficient to support the state court's finding that Alford was one and the same person who had been convicted in the prior cases.

Alford did not establish at the hearing, and has not here demonstrated, any procedural irregularity in the prior cases which would have required further proof from the State under Louisiana law.  The evidence, considered in the light most favorable to the prosecution, was therefore sufficient for the state trial court to find that the prior convictions were appropriate as a basis to enhance Alford's sentence under the habitual offender laws.

Furthermore, this court cannot consider any alleged violations that may have occurred in the prior cases addressed in Alford's multiple bill.  The United States Supreme Court has held that federal habeas corpus relief is not available when a petitioner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody.  Lackawanna County District Attorney v. Coss, 532 U.S. 394, 400-401 (2001).  Therefore, Alford cannot challenge his current sentence in this court by claiming that his prior convictions were not constitutionally sound.

---

[42]Id., p. 5.

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of <u>Jackson</u>.  Alford is not entitled to relief on this claim.

## IX.   DENIAL OF A MEANINGFUL APPEAL (CLAIM NO. FIVE)

Alford alleges that he was denied adequate judicial review on appeal because his appellate counsel, who was not trial counsel, did not have a complete transcript.  He claims that appellate counsel should have had a complete trial record, including transcripts of all pretrial proceedings, the State's closing argument and the court's charge to the jury, to search for potential errors.

The Supreme Court has held that an indigent defendant is entitled to a free copy of the trial transcript in order to have a meaningful appeal.  <u>Hardy v. United States</u>, 375 U.S. 277 (1964).  However, the State is not "obligated to automatically supply a complete verbatim transcript," <u>Moore v. Wainwright</u>, 633 F.2d 406, 408 (5th Cir.1980), and a State need not waste its funds providing for free those parts of the transcript that are not "germane to consideration of the appeal."  <u>Draper v. Washington</u>, 372 U.S. 487, 495 (1963).

Louisiana law complies with these constitutional standards.  Appellate review in Louisiana is restricted to questions of law based on defense objections and assignments of error.  <u>State v. Francis</u>, 345 So.2d 1120, 1125 (La.) (citing La. Const. Art. 5, § 5(C) (1974) and La. Code Crim. P. art. 841), <u>cert. denied</u>, 434 U.S. 891 (1977).  Thus, when the transcript and record contain the portions necessary to address the issues actually

raised on appeal, including those portions where objections were made by counsel, the record is constitutionally sufficient for meaningful appeal. Schwander v. Blackburn, 750 F.2d 494 (5th Cir. 1985).

In this case, the record contains transcripts of the pretrial motion hearings held September 3 and 16, 1996 and the multiple offender hearing held November 4, 1997.[43] The record also contains the trial transcript.[44] A complete reading of the trial transcript shows that it contains counsel's opening statements, all witness testimony, trial objections and that portion of the closing arguments to which objections were lodged.[45] A more complete transcript of the closing arguments is also in the record.[46] The record and transcripts were sufficient for the Louisiana Fourth Circuit to respond to the errors raised by appellate counsel.

Furthermore, in this case, Alford suggests only that his counsel should have had a more complete transcript to search for possible errors. It is well settled that the State is not "required to furnish complete transcripts so that the defendants . . . may conduct 'fishing expeditions' to seek out possible errors at trial." Jackson v. Estelle, 672 F.2d

---

[43]St. Rec. Vol. 2 of 6, Motion Hearing Transcript, 9/3/96; Transcript of Motion Hearing, 9/16/96; Multiple Bill Hearing Transcript, 11/4/97.

[44]St. Rec. Vol. 2 of 6, Trial Transcript, 5/22/97.

[45]Id., pp. 4-18 (opening arguments), pp.19-150 (witness testimony and various objections throughout), pp.151-154 (objections during closing argument).

[46]St. Rec. Vol. 2 of 6, Transcript of Closing Arguments, 5/22/97.

505, 506 (5th Cir.1982).  The law does not require a more complete transcript where Alford is unable "to indicate one specific error committed during the portions of trial not included in the record." Cf. United States v. Renton, 700 F.2d 154, 159 (5th Cir.1983).

As discussed above, Alford alleges that the trial court gave an erroneous reasonable doubt charge.  However, there is nothing in the record to support his claim nor is there any indication that his counsel challenged the charges given by the state  trial court to have preserved such a claim for review.

Nevertheless, conclusory allegations of this sort do not support a constitutional violation for habeas review.  To merit federal habeas corpus relief on a claim that state court transcripts are unconstitutionally incomplete, the petitioner must support his claims with more than mere unsubstantiated transparent speculation.  See Mullen v. Blackburn, 808 F.2d 1143, 1146 (5th Cir.1987); United States ex. rel. Hunter v. Follette, 307 F. Supp. 1023, 1025 (S.D.N.Y.) ("general assertion that omitted portions of the record 'contained most of the . . . trial errors which are reversible,' presents no ground for federal habeas corpus."), aff'd, 420 F.2d 779 (2d Cir.1969), cert. denied, 397 U.S. 1067 (1970).  Alford has not met this burden.  See Johnson v. Blackburn, 1987 WL 9810 at *2 (E.D. La. 1987).

For the foregoing reasons, the denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent.  Alford is not entitled to relief on this claim.

29

X.      INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NOS. FOUR AND
        FIVE)

Alford claims that his trial and appellate counsel offered ineffective assistance.

Specifically, he alleges that trial counsel failed to object to the evidence and proof

presented by the State at the multiple offender hearing.  He further alleges that appellate

counsel failed to obtain a complete transcript to assist in preparation of the appeal.

The issue of ineffective assistance of counsel is a mixed question of law and fact.

Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this

court is whether the state courts' denial of relief was contrary to or an unreasonable

application of Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme

Court established a two-part test for evaluating claims of ineffective assistance of

counsel.

In Strickland, the court first held that "the defendant must show that counsel's

representation fell below an objective standard of reasonableness."   Id. at 687-88.

Second, "[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."

Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, the court need not address

both prongs of the conjunctive Strickland standard, but may dispose of such a claim

based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d

at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough, however, under Strickland 'that the errors had some conceivable effect on the outcome of the proceeding.'"  Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  Bell v. Cone, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."

31

Strickland, 466 U.S. at 690.  Federal courts have consistently recognized that tactical

decisions when supported by the circumstances are objectively reasonable and do not

amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352,

358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120

F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly

proven otherwise.  Strickland, 466 U.S. at 689; Moore v. Johnson, 194 F.3d at 591.  The

burden is on petitioner to demonstrate that counsel's strategy was unreasonable.

Strickland, 466 U.S. at 689.

A.    TRIAL COUNSEL

Alford alleges that his counsel was ineffective at the multiple offender hearing in

the following ways: (a) Counsel failed to object to the multiple bill which contained an

incorrect date. (b) Counsel failed to object when the State did not establish that he was

represented by counsel in the prior cases. (c) Counsel failed to object to the identification

testimony by Officer James. (d) Counsel failed to object to the guilty plea proceedings

pursuant to Boykin in the prior cases. (e) Counsel failed to object to the lack of proper

procedures. (f) Counsel failed to investigate prior to the multiple bill hearing.  Alford

contends that his counsel should have filed a written opposition to, or motion to quash,

the multiple bill based on any one or all of the foregoing grounds for objection.

As discussed above, the evidence submitted by the State at the multiple bill hearing was sufficient to prove that Alford was a multiple offender under Louisiana law and constitutional standards.   Alford concedes that the State established that his fingerprints matched those in the arrest registers.   Contrary to Alford's contention, the record also shows that the state trial court had before it certified copies of the arrest registers and court packets from both convictions, along with the fingerprint evidence. Louisiana law did not require that the State or Officer James do more than confirm that the fingerprints on the arrest register associated with the prior case matched those of the defendant in the current case.

The state trial court also determined that there were proper guilty plea proceedings pursuant to Boykin in both of the prior cases, including the full explanation of rights and compliance with proper procedures.[47]  The State having met its burden of proof, and the state trial court having determined that the prior convictions were proven to be proper predicate offenses, there was no basis for Alford's counsel to object to the fingerprint evidence or to further challenge the predicate offenses themselves.

Alford also argues that his counsel should have objected to the fact that the multiple bill indicated that he entered a plea of guilty to possession with intent to distribute cocaine on January 3, 1989.  Alford contends that this conflicts with the state

---

[47]St. Rec. Vol. 2 of 6, Multiple Bill Hearing Transcript, 11/4/97.

trial court's findings that the plea was entered in that case on September 7, 1998.  Alford, nevertheless, has failed to present through this argument that a basis existed for counsel to object to or file a motion to quash the multiple bill itself.

Under Louisiana law, the purpose of a bill of information is to inform a defendant of the nature and cause of the accusation against him as required by the Louisiana Constitution, art. I, § 13.  State v. Stevenson, 839 So.2d 340, 345-46 La. App. 5 Cir. 2003.  In Louisiana, a clerical error in the bill does not require a dismissal of the bill or reversal of a conviction if the error or omission does not mislead the defendant to his prejudice.  Id. (citing La. C. Cr. P. art. 464[48]; State v. Varnado, 798 So.2d 191, 194 (La. App. 5th Cir. 2001); and State v. Jason, 779 So.2d 865, 873 (La. App. 4th Cir. 2000)). The fact that the date of conviction is incorrect is inconsequential when the multiple bill contained the correct case number, division, and statutory citation of the felony.  Id.

With this as the standard in Louisiana, there was no basis for counsel to object to the error in the bill or to file a motion to quash.  The multiple bill in this case provided Alford with the correct prior case number, court section, and identification of the prior felony and statute violated, as well as the resolution of that case by plea of guilty.  The transcript of the multiple bill hearing shows that no one was confused as to the identity

---

[48]La. Code Crim. P. art. 464 provides: "The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice."

of the prior convictions being used to enhance the underlying felony herein.  The record does not reflect, and Alford does not argue, any substantive prejudice resulting from the apparent difference between the date used in the multiple bill and the date indicated by the state trial court at the multiple offender hearing.

For all of the foregoing reasons, Alford's counsel was under no obligation file a motion to quash the multiple bill that was not defective or to object to multiple offender proceedings that warranted no such objection.  Counsel's failure to raise baseless objections or motions was not deficient performance or prejudicial to Alford.  See Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).

B.    APPELLATE COUNSEL

Alford argues that his counsel on appeal was ineffective for not obtaining or reviewing the omitted portions of the trial record.  Alford argues that he is entitled to reversal of his conviction because of the incomplete transcript on appeal.  This claim is without merit.

As noted above, the record does not reflect that any objections were made during the voir dire, the reading of the verdict or the jury instructions, which are the missing portions of the trial transcript Alford addresses.  Since objections would have been necessary to preserve error for review on direct appeal pursuant to La. Code Crim. P. art.

841, no error existed in counsel's failure to seek out those missing parts of the transcript. Weston v. Ieyoub, 69 F.3d 73, 76 (5th Cir. 1995); Schwander, 750 F.2d at 502.  In addition, because the portions could not be relevant to the appeal, no prejudice resulted from counsel's use of an incomplete transcript to prepare the appeal.  Weston, 69 F.3d at 76; Schwander, 750 F.2d at 502.

Even if this court were to assume some error existed in those missing portions of the transcript, "the failure of counsel to press his argument on appeal 'does not warrant setting aside the judgment of a criminal proceeding' [since] the error has no effect on the judgment.'"  Schwander, 750 F.2d at 502 (quoting Strickland, 466 U.S. at 692).  Without a showing of prejudice, any alleged deficiency in counsel's performance need not be considered.  Strickland, 466 U.S. at 697-98; Larsen v. Maggio, 736 F.2d 215, 217-18 (5th Cir. 1984).  Alford therefore has not established that he was denied effective assistance of appellate counsel.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the petition of Charles Alford for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United

Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __29th__ day of September, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE